OPINION.
Muedock:
On October 16, 1928, the petitioner’s motion, that the bearing in this case be limited in the first instance to the establishment of abnormalities and the trial of issues which do not involve sections 327 and 328 of the Revenue Act of 1918, was granted. It was then the duty of the petitioner, if it desired any further hearing on the question of special assessment, to offer at the hearing, in the first instance, satisfactory proof of abnormalities within the meaning of section 327 (d) of the Revenue Act of 1918, which was the section, judging from its pleadings, under which it claimed it was entitled to special assessment.
The petitioner offered no proof and made no argument in support of its allegation that the Commissioner erred in failing to assess its profits tax under the provisions of sections 327 and 328 of the Revenue Act of 1918. We see nothing in the facts which would indicate that the Commissioner erred in this regard and we therefore affirm his action and deny the petitioner the right to any further hearing on this question.
The petitioner claims that it is a personal service corporation within the meaning of that term as set forth in section 200 of the Revenue Act of 1918. We must determine whether its income is to be ascribed primarily to the activities of the principal owners or *908 stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and whether capital, either invested or borrowed, is a material income-producing factor, and also whether 50 per cent or more of its gross income consists of gains, profits, or income derived from trading as a principal. If our decision on any one of these points should be unfavorable to the petitioner, then our judgment on this point must be for the respondent. Bryant & Stratton Commercial School, Inc., 1 B. T. A. 82; Scheffler Hair Colorine Co., 1 B. T. A. 61.
The petitioner’s counsel and one of its witnesses were free to admit that in doing 11 or 12 per cent of its business, the petitioner traded as a principal, and that 7½ per cent of its gross income was from this source, but they contended that this business resulted in a loss. It is immaterial on the “ trading as a principal ” question whether or not the business resulted in a loss, because gross income is the determining factor. The only witness who testified in regard to these percentages stated that where the petitioner bought goods before it had orders for them and subsequently sold those goods, it was trading as a principal, and where it had orders first and then bought the goods from a manufacturer for delivery to its customer, it was not trading as a principal but was only acting as an agent and collecting a commission for its services. We can not agree with this witness’ classification, for in our opinion the petitioner in all of its business was selling its own goods and thus trading as a principal. It is true that it had contracts with manufacturers to represent those manufacturers in foreign markets, and in the two such contracts offered in evidence as typical examples, the petitioner is called a selling agent for the manufacturer and the contracts provide that the manufacturer pay the petitioner a so-called commission. However, these two typical contracts do not indicate whether or not the petitioner was to take title to the goods which it ordered. The testimony and other evidence is clear on this point and .shows that the petitioner did take title to the goods, that it was responsible to the manufacturer for the goods, and that it paid the manufacturer for the goods before they reached their destination and before the purchaser had accepted the draft attached to the bill of lading. In case the purchaser refused to accept the goods, the manufacturer lost nothing, because in that case the petitioner, being responsible for the goods, and having paid the manufacturer, sold them on what it called its “ own account.”
The petitioner has not shown that capital was not a material income-producing factor. It had a substantial amount of capital of its own, borrowed money on its notes, had a large amount of *909 accounts payable and accounts receivable and also claimed that it had a substantial amount of bad debts each year. Furthermore, its credit must have been good with its New York bank; otherwise, the latter would not have discounted the drafts in the way it did. Its good credit seems to have been an important factor in its business and we do not know that this good credit was not due to the large amount of capital retained by the petitioner. All these things indicate that capital was used in the petitioner’s business and that its use was important in the earning of income. Whether the petitioner might have successfully conducted its business in some other way we do not know, but in any event, having been shown the manner in which the petitioner carried on its business, we can not say from the evidence that capital was not a material income-producing factor. Cf. W. J. Byrnes & Co., 5 B. T. A. 175.
Only a few of those holding the petitioner’s preferred stock were regularly engaged in the active conduct of the affairs of the corporation and these few held only a small part of the total amount of preferred stock outstanding. Of the holders of the common stock, only Peck, Hillard, Wulp, McNeal, and Bogart were regularly engaged in the active conduct of the affairs of the corporation, while four or five other persons holding at least 45 per cent of this class of stock were not so engaged. Cf. Home Insurance Agency, 5 B. T. A. 1020; Chappelow Advertising Co., 13 B. T. A. 1090; Fuller & Smith v. Routzahn, 23 Fed. (2d) 959. We do not know exactly how many employees the petitioner had nor do we know how important they were as income-producing factors. One witness stated that the petitioner had probably several hundred salesmen in South America. We know that the petitioner had representatives at a number of the principal cities in Australasia and that it had additional employees in London and in a number of other places. The petitioner’s business was the kind that ordinarily requires the use of salesmen and we know that the petitioner had salesmen. The petitioner does not meet the requirement of the statute that income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation. Cf. Peerless Engraving Co., 3 B. T. A. 464.

Judgment will be entered for the respondent.